UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROLAND R. PENNINGTON, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-04-3118 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Plaintiff Roland R. Pennington filed this action for judicial review of an unfavorable decision by the Internal Revenue Service at a Collection Due Process (CDP) hearing. Before the court is a motion to dismiss/motion for summary judgment by the United States (Dkt. 46). For the reasons discussed below, the motion is granted.

## BACKGROUND

This dispute arises from the failure of Control Specialties, Inc. (Control) to pay its employment taxes. Pennington was the sole shareholder and president of Control. After non-payment by a customer, Control failed to satisfy its tax liabilities and ceased operation around March 2001. In a letter dated October 23, 2000, the IRS notified Pennington there was a proposed assessment of a Trust Fund Recovery Penalty against him personally for the Control tax liability.[1]

---

[1] Employers must withhold federal social security and income taxes from their employees' wages. 26 U.S.C. §§ 3102, 3402; *Wood v. United States*, 808 F.2d 411, 414 (5th Cir. 1987). Under section 7501(a), an employer holds the money owed to the government "in trust" to be paid at a later date. *Turnbull v. United States*, 929 F.2d 173, 178 (5th Cir. 1991). Title 26 U.S.C. § 6672(a) permits the government to impose a penalty equal to the amount of the unpaid taxes in order to encourage employers to preserve money in trust for the withholding taxes. The penalty may be imposed on any person "required to collect, truthfully account for, and pay over" withholding taxes who willfully fails to do so. *Id.*; *see also* 26 U.S.C. §§ 6671(b), 6672(a). (Although the liability imposed by section 6672 is deemed a "penalty," it is not to be considered penal in nature because it merely "brings to the government [ ] the same amount to which it was entitled by way of the tax." *Newsome v. United States*, 431 F.2d 742, 745 (5th. Cir. 1970)). As president and sole shareholder of the company Pennington had broad authority to make decisions with respect to disbursement of funds and payment of creditors, and he does not deny responsibility for paying the withholding taxes to the IRS. *Cf. Howard v. United States*, 711 F.2d 729, 736 (5th Cir. 1983).

The letter also notified Pennington of his right to an administrative appeal and hearing to dispute the proposed assessment. Five months later, Pennington obtained a secured loan for $1.1 million from Independence Bank (now Regions Bank), pledging his real properties as collateral. The loan proceeds were not used to satisfy any of the employment taxes.[2] Nonetheless, the IRS considered the loan proceeds to be part of Pennington's available assets. Pennington filed a protest with the IRS Appeals Office to discuss collection alternatives, but the parties were unable to agree on a suitable compromise offer or installment agreement.[3] The IRS sent Pennington a letter on October 5, 2001, advising him that the trust fund recovery penalty was going to be assessed against him and that he should remit payment immediately.[4] The IRS assessed Pennington with trust fund recovery penalties on or about November 26, 2001, for $345,958.31.[5] Shortly thereafter Pennington made a compromise offer, but it was rejected.[6] Because Pennington did not voluntarily pay the assessed penalty, IRS Officer Daryl Walton sent Pennington a form entitled "Notice of Intent to Levy and Your Right to a Hearing" as directed by 26 U.S.C. § 6330(a).

---

[2] The IRS later included part of the proceeds from this loan to calculate Pennington's net worth, calling it a "dissipated asset." Pennington asserts the IRS officers abused their discretion when they rejected his compromise offer and determined that he had dissipated his assets without an investigation that "clearly revealed" otherwise. Dkt. 48. Pennington argues the funds were not dissipated because they were used to pay insurance and loan-required repairs to clean up the properties. Nevertheless, funds in a debtor's account are not deemed "unavailable" for use because the debtor has voluntarily entered into a contract with a bank under which the use of the loan proceeds may be restricted. *See Bell v. United States*, 355 F.3d 387, 394-98 (6th Cir. 2004). While the choice between shutting down Control, suspending operations, or filing for bankruptcy might not be desirable, under § 6672, difficult choices do not excuse the duty to pay taxes. Pennington would have to prove the loan proceeds were encumbered and were legally obligated to be held in trust for a purpose that was superior to the United States's interest, and no such proof has been offered. *Bell,* 355 F.3d at 394.

[3]   Dkt. 6; Dkt. 46, Ex. 2.

[4]   *Id.*

[5]   Dkt. 6.

[6]   *Id.*

On January 3, 2003, Pennington appealed the levy and requested a CDP hearing. At the CDP hearing with Appeals Officer Christopher Darling on October 29, 2003, two general issues were raised. First, Pennington maintained that the statute of limitations had run as to a portion of the assessment against him. Second, Pennington argued the government should accept his compromise offer of $42,011.00 in satisfaction of the tax liability, rather than seeking the full $345,958.31.

On February 12, 2004, the IRS sent Pennington a Notice of Determination Concerning Collection Actions Under Section 6320 and/or 6330.[7] The Notice of Determination memorialized the issues discussed at the CDP hearing and notified Pennington that his compromise offer was unacceptable because requested additional documents were not received. Darling also determined that the statute of limitations had not run, and the assessment against Pennington was therefore proper.[8]

Pennington maintained he did not receive any request for additional documents to support his compromise offer. Darling therefore offered again to review the requested information if Pennington submitted the documents by March 31, 2004.[9] Darling received the additional information, but again rejected the offer, determining Pennington had the ability to pay the liability in full.[10]

---

[7]     *Id.*

[8]     *Id.*

[9]     Dkt 6, Ex. C.

[10]    Dkt. 6, Ex. D.

3

After the IRS sustained the levy, Pennington filed the present suit seeking judicial review.[11] The court ordered Pennington to submit another compromise offer to an officer unfamiliar with the case.[12] (Pennington argued that Darling's second assessment of his compromise offer violated 26 U.S.C. § 6330(b)(3) because Darling had already issued a Notice of Determination letter and had knowledge of the background of the case).[13] This compromise offer was submitted to Sherry Kenisky in the IRS Appeals Department in San Antonio, Texas, who found that it was insufficient as well.[14]

While Pennington asserts numerous claims in his complaint and his response to the government's motion, the court's jurisdiction to review this matter under 26 U.S.C. § 6330(d)(1)(B) is limited to the following issues: (1) whether the IRS denied Pennington due process by failing to provide him with a fair CDP hearing, and (2) whether IRS officers abused their discretion in upholding the Trust Fund Recovery Penalty and denying the compromise offers. After reviewing the record, the court concludes that Pennington received a fair CDP hearing and that the IRS officers did not abuse their discretion in sustaining the levy action and rejecting Pennington's compromise offers.

---

[11] Appeals of adverse IRS rulings after a CDP hearing are to the District Courts rather than the Tax Courts. *See* 26 U.S.C. § 6330(d)(1)(B); *Chavez v. United States*, 2004 WL 1124914, at *3 n.7 (W.D. Tex. 2004). In addition, taxpayer liabilities under section 6672 of the Internal Revenue Code are also reserved for the District Courts. *Abu-Awad,* 294 F. Supp. 2d at 886-87. Because Pennington challenges the IRS's procedure used to assess the trust fund recovery penalty as well as the decisions of the CDP hearing, jurisdiction is properly with this court.

[12] Dkt. 25.

[13] Dkt. 6.

[14] Dkt. 46, Ex. 10.

Therefore, while perhaps not the procedurally ideal vehicle,[15] the government's motion to dismiss/motion for summary judgment will be granted.

## ANALYSIS

1. **The CDP Hearing**

    A.  Section 6330 of the Internal Revenue Code

The Internal Revenue Service Restructuring and Reform Act of 1998 added section 6330 to the Internal Revenue Code. This statute provides protection to taxpayers by requiring the IRS to notify the taxpayer of a right to a CDP hearing before it places a levy on property. *See* 26 U.S.C. § 6330(a); *Robinette v. Comm'r of the Internal Revenue Serv.*, 439 F.3d 455, 458 (8th Cir. 2006). Under 26 U.S.C. § 6330(b), the hearing must be before an impartial officer with no prior involvement with the tax assessment, and section 6330(c) provides that a person may raise any relevant issue related to the tax or levy. *Robinette,* 439 F.3d at 458. A taxpayer may only challenge the existence or amount of the underlying tax liability at a CDP hearing, however, if there was no prior opportunity to dispute the liability. *See* 26 U.S.C. § 6330(c)(2)(B); *see also Abu-Awad v. United States*, 294 F. Supp. 2d 879, 886 (S.D. Tex. 2003). When a taxpayer has already contested or had an opportunity to contest the underlying liability, that issue is precluded from CDP consideration, as well as from

---

[15] Some courts have noted, for instance, that a motion for summary judgment is not the proper procedural posture for reviewing an administrative agency's determination. *See, e.g., Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579 (10th Cir. 1994); *Lodge Tower Condominium Ass'n v. Lodge Properties, Inc.*, 880 F. Supp. 1370, 1374 (D. Colo. 1995), *aff'd,* 85 F.3d 476 (10th Cir. 1996); *Allglass Systems, Inc. v. Comm'r of Internal Revenue,* 330 F. Supp. 2d 540, 543 (E.D. Pa. 2004); *Siquieros v. United States,* 2004 WL 2011367, at *3 n.10 (W.D. Tex. 2004). Indeed, it is not the role of the court to determine whether the taxpayer has failed to state a claim for which relief may be granted or that there are no material facts in dispute and the government is entitled to judgment as a matter of law. Instead, the court's function is much more limited—reviewing compliance with section 6330 and ensuring comportment with basic notions of due process.

judicial review. Because many of Pennington's ancillary claims were not asserted at his CDP hearing, they are not reviewable in this forum.

### B. Standard of Review

Section 6330(d)(1)(B) does not indicate the standard of review for reviewing this type of administrative determination. *Abu-Awad,* 294 F. Supp. 2d at 887. The general practice of the courts is that if the underlying tax liability was reviewed at the CDP hearing, then review of the IRS officer's determination is *de novo*. *Id.* When the underlying tax liability is not properly at issue at the CDP hearing, but a taxpayer raises other issues that are reviewable by the court, then the administrative determination is reviewed for abuse of discretion. *Jones v. Comm'r of Internal Revenue Serv.*, 338 F.3d 463, 466 (5th Cir. 2003).

To an extent, Pennington does challenge the amount of the underlying liability by arguing that the statute of limitations had run on a portion of taxes under 26 U.S.C. § 6501. However, abuse of discretion is still the proper standard here for several reasons. First, nothing put forth by Penngtion actually supports this assertion. Second, Pennington does not dispute that he in fact owed the taxes, he only claims that the IRS's ability to collect on a portion had expired. But most importantly, and as touched upon before, when a taxpayer contests the underlying tax liability at a prior hearing in which he meaningfully participated, he is precluded from raising it again at the CDP hearing. *Siquieros v. United States*, 2004 WL 2011367, at *3 (W.D. Tex. 2004), *aff'd*, 124 Fed. Appx. 279 (5th Cir. 2005); *Abu-Awad*, 294 F. Supp. 2d at 888. The validity of his tax assessment was discussed at a meeting with IRS Officer Walton before the CDP hearing.[16] Pennington alleges Walton agreed

---

16 Dkt. 48.

the statute of limitations had run. *Id.* Regardless of whether Walton actually did so,[17] the existence of the discussion shows that Pennington was able to contest his underlying tax liability prior to the CDP hearing. Thus, the issue was not properly a part of the CDP hearing, and by extension, is not considered by this court.

It should be noted that even though Pennington reasserted the statute of limitations claim during his CDP hearing with Darling, and Darling voluntarily examined Pennington's statute of limitations claim, this precluded issue still does not become reviewable by a district court.[18] *See Francis P. Harvey & Sons, Inc. v. Internal Revenue Serv.*, 2004 WL 2915309, at *6 (D. Mass. 2004) (refusing to review issues that were not properly subject to a CDP hearing, regardless of whether the issues were considered at the hearing or referenced in the Notice of Determination). As the statute of limitations was not properly at issue at the CDP hearing, and thus the underlying tax liability was not properly contested at the CDP hearing, the court will employ the abuse of discretion standard rather than review the levy determination *de novo*.

Under the abuse of discretion standard, the court "must consider whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is

---

[17] Statutes that limit the assessment or the collection of taxes are to be strictly construed in favor of the government. *Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 391 (1984). Because the IRS is only bound by misstatements made by its agents when there is affirmative misconduct, it was not an abuse of discretion when Darling imposed the tax penalty after reviewing the information provided to him at the CDP hearing. *Abu-Awad,* 294 F. Supp. 2d at 891(citing *Triplett v Heckler*, 767 F.2d 210, 213 (5th Cir. 1985)). Even if Walton had misinformed Pennington about the statute of limitations, in the absence of evidence that the statement constituted affirmative misconduct, the court finds that Darling did not abuse his discretion when he determined that the statute of limitations had not run for the assessment.

[18] Pursuant to 26 C.F.R. § 301.6330-1(e)(3), A-E 11, an IRS appeals officer may consider "precluded issues" at his discretion.

a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds by, Califano v. Sanders*, 430 U.S. 99, 105 (1977); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### C. Due Process Requirements

Title 26 U.S.C. § 6330(b) identifies the minimum requirements necessary for a fair hearing. Section 6330(b) requires that: (1) an impartial officer conduct the hearing; (2) certain issues may be heard, such as a compromise offer; (3) the conducting officer verifies the requirements of applicable law and administrative procedure have been met; and (4) challenges to the underlying tax liability may be raised only if the taxpayer did not receive a statutory notice of deficiency or receive an opportunity to dispute such liability beforehand. *See Allglass Sys., Inc. v. Comm'r of Internal Revenue*, 330 F. Supp. 2d 540, 544 (E.D. Pa. 2004). As discussed above, the fourth element is not at issue here and therefore does not require further analysis.

With respect to the first element, Pennington's CDP hearing was scheduled with Darling, who had no prior involvement with Pennington's case.[19] Darling reviewed Pennington's file, rejected his compromise offer, and sent him a Notice of Determination that the levy would be sustained. After Pennington submitted additional documents, his compromise offer was again reviewed and rejected by Darling. Because of his prior involvement, Darling may not have been an impartial officer as required under section 6330 when he reviewed Pennington's compromise offer the second time. However, after commencement of this action, Pennington submitted another compromise offer for

---

[19] Dkt. 46.

review to a different IRS officer.[20]  This time, the IRS sent Pennington's file to the IRS office in San Antonio rather than the Houston office where Pennington's file was originally reviewed.[21]  Appeals Officer Kenisky reviewed Pennington's file and made an independent determination that Pennington's compromise offer was insufficient.  Because she had no previous involvement with the case, there is no question the first element is satisfied.

The letters and conversations between Pennington and Darling, and later with Kenisky, are sufficient to satisfy the second element of a fair hearing.  *See Allglass,* 330 F. Supp. 2d at 544.  The record includes correspondence between Pennington and the IRS and show that he not only had an opportunity to raise issues regarding his tax liability, he in fact did so.

The third element calls for an official of the IRS Office of Appeals to verify that the requirements of applicable law or administrative procedure were satisfied when the IRS assessed the trust fund recovery penalty.  *See* 26 U.S.C. § 6330(c)(1).  In the Notice of Determination sent to Pennington, Darling wrote that he reviewed Pennington's file and determined "all the legal and procedural requirements prior to levy action have been met."[22]  Without a "clear error in judgment" as to whether the tax penalty had been properly assessed and sustained against a taxpayer, a court should not overturn the determination of an  administrative agency.  *See McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001).  The record indicates that Darling took the necessary steps to ensure that all of the proper procedures had been afforded to Pennington.  Darling made note on the Notice of Determination that he reviewed Pennington's Form 12153 (Request for a CDP hearing) and

---

[20]     Dkt. 46.

[21]     *Id.*

[22]     Dkt. 6, Ex. B.

attached correspondence, account transcripts, and case file history leading up to the CDP hearing in order to verify that the assessment was proper, that Pennington received notice of the assessment and penalty, and that all other procedures were followed.[23] Section 6330(c)(1) does not require the Appeals Office to rely on any particular document for verification purposes, but it appears that Darling performed a comprehensive review of Pennington's file. Accordingly, the court finds that the protections required under section 6330 were afforded to Pennington and that no showing has been made that the CDP hearing was not fair.

**2.      Rejection of Pennington's Compromise Offers**

Pennington further claims that the IRS wrongfully rejected his compromise offers and overstated his ability to pay the tax penalty because his assets and monthly income were miscalculated.[24] Section 6330 limits this court's review to whether or not the IRS officers "adequately considered" Pennington's compromise offer before determining that it should be rejected. *Olsen v. United States*, 326 F. Supp. 2d 184, 188 (D. Mass. 2004), *aff'd*, 414 F.3d 144 (1st Cir. 2005). Both Darling and Kenisky reviewed Pennington's file and the additional information provided to them by Pennington. Both officers provided Pennington with the figures they used to determine his ability to pay the liability. There is no indication either officer abused his or her discretion or failed to adequately consider Pennington's offer in determining that the levy was an effective balance to allow for the efficient collection of the taxes owed. Although Pennington disagrees with the calculations, he did not provide the needed proof of his inability to pay. In order to find clear error in the rejection of Pennington's compromise offer, Pennington must provide specific evidence that

---

[23]      Dkt. 46, Ex. 8.

[24]      Dkt. 48.

the value of his assets were incorrectly calculated by the government. Pennington provided information about his assets, but failed to explain how he calculated the figures in a manner allowing Kenisky to verify his methodology, and gave her no reason to find error in her calculations. Kenisky therefore did not abuse her discretion in determining Pennington could pay more than his offer of approximately $42,000.

In addition, when determining whether or not to accept a compromise offer, the IRS may consider information in the taxpayer's file, such as the taxpayer's history of noncompliance in filing and paying his taxes, or the taxpayer's actions and whether they were for the purpose of avoiding the tax. 26 C.F.R. § 301.7122-1(c)(3)(ii); *see also Magnolia Media Group, Ltd. v. United States*, 2003 WL 23190613 (N.D. Tex. 2003) (holding that an appeals officer did not abuse his discretion by rejecting a compromise offer made by a taxpayer with a history of non-compliance with payroll tax laws). Kenisky informed Pennington that his failure to make income tax payments in 2003 and 2004 were taken into account when she rejected his compromise offer and placed the burden on him to prove that he had no taxable income allowing him to pay the tax penalty.

Pennington maintains he proved to Kenisky that he did not owe any taxes in a reply letter dated May 7, 2005.[25] But this assertion is seriously undermined by another letter where Pennington admits he did not file a tax return because he did not want the IRS to take his refund.[26]

The correspondence between the parties exchanging financial information, calculations used and faxed by Kenisky, as well as Pennington's admission that he had not paid his income taxes when

---

[25]    Dkt. 48, Ex. 27.

[26]    Dkt. 30. Pennington declared that "I have not filed my tax return because the IRS will take my refund."

he made his compromise offer provides satisfactory evidence that Pennington's compromise offer was adequately considered. For these reasons, the court finds that Officer Kenisky adequately considered Pennington's compromise offer and that her determination that his assets were greater than the amount offered in compromise was not an abuse of discretion.

## CONCLUSION

The court finds that the IRS adequately considered all the factors necessary for an appropriate determination under 26 U.S.C. § 6630, and therefore did not abuse its discretion in sustaining the levy against Pennington and rejecting his compromise offers.

Accordingly, the United States of America's motion is GRANTED.

Signed on July 10, 2006, at Houston, Texas.

_____
Gray H. Miller
United States District Judge